Filed 5/3/13  Brown v. Scott CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

|  |  |
|---|---|
| STEPHEN M. BROWN, | B240426 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. SC103340) |
| v. | |
| RICHARD SCOTT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County.  Richard A. Stone, Judge.  Reversed.

Freeman, Freeman & Smiley, Steven E. Young and Dawn B. Eyerly for Plaintiff and Appellant.

Gary W. Faulkes and Stephen P. Grayson for Defendants and Respondents.

\* \* \* \* \* \* \* \* \* \*

Landlord Stephen Brown (plaintiff) sued tenants Richard Scott and Jan Smith (defendants), for breaching their three-year lease for a multimillion dollar Malibu home after they moved out and stopped paying rent only three months after signing the lease. In their answer to the complaint, defendants entered a general denial and asserted a number of affirmative defenses. Defendants also cross-complained, alleging a number of defects in the property. Defendants moved for summary judgment on the complaint, contending "as a matter of law they were entitled to vacate the property due to lack of dead bolt locks on the entry doors to the property in violation of Civil Code Section 1941.3." Defendants did not assert as an affirmative defense that a violation of Civil Code section 1941.3[1] released them from their obligations under the lease and never sought leave to amend to add that affirmative defense.

The trial court granted summary judgment against plaintiff on the ground that defendants met their burden of showing that no deadbolt locks were installed on the premises. We reverse, finding there are numerous triable issues of material fact. In addition, the trial court erred in granting summary judgment on an affirmative defense that was not raised in the answer.

## BACKGROUND

### 1. The Undisputed Facts

The following facts are undisputed: Plaintiff and defendants entered into a three-year lease on or about October 3, 2008, for a multimillion dollar home in Malibu, California. The lease called for the payment of monthly rent of $28,000, and a $60,000 security deposit. When the parties entered into the lease, the property was listed for sale through plaintiff's real estate agent, Carol Bird.

The lease included a residential lease disclosure addendum providing: "LANDLORD'S DUTY TO PROVIDE SECURITY: California Civil Codes § 1940 and 1941.3 (a) (1)(2)(3) require a landlord to provide an operable dead bolt lock on each main swinging entry door of a dwelling unit and Lessor shall install and maintain operable

---

[1]     All further statutory references are to the Civil Code unless otherwise indicated.

2

window security or locking devices for windows that are designed to be opened. Lessee is advised to determine that the property is provided with these proper security devices, and if not so provided or the devices are inoperable, Lessee shall notify Landlord of the discovered condition and Landlord has a duty to resolve the matter as the law requires. The law also requires the Lessee to notify the Landlord when the Lessee becomes aware of an inoperable lock or window security devices."

A second disclosure addendum provided that "Effective July 1, 1998, SB 548, Chapter 537 requires a Landlord of a dwelling to install and maintain operable deadbolt locks on exterior doors of the unit . . . . Tenant and Landlord are advised to investigate whether the property complies with the code."

On December 29, 2008, less than three months after they had moved in, defendants gave plaintiff notice of their intent to vacate the property. The letter purported to rescind the lease agreement under section 1689 for a "failure of consideration." In addition to many other complaints, the letter complained that "there is absolutely no security whatsoever to the residence." Defendants vacated the property on January 31, 2009. They had paid rent through December 31, 2008. Plaintiff did not return any portion of the $60,000 security deposit.

**2.     The Material Disputed Facts**

The parties dispute every other material fact, including even what locks were on the various doors to the house and whether the locks (if any) were operable. Defendants offered evidence that they did not receive any keys to the property once they moved in, because plaintiff had installed a "keyless entry and security system referred to as a 'Smart Security System.'" This system used electronic touchpads rather than keys. Defendants were given a numeric code to access the house. The only deadbolt lock was on a side-entry door in the maid's quarters. The front entry door, which was a swinging door, did not have a deadbolt.

Plaintiff offered evidence that at the time defendants were shown the property, they were shown the Smart Security System, and the keypad and automatic door openers.

3

Plaintiff offered expert testimony that the front entry door was equipped with a "two bar magnetic lock" that was at least as secure as a deadbolt.

Defendants offered evidence that in October 2008 "a Latin male" maintenance worker surprised defendant Smith when he entered the house through use of a "'clicker'" without advance notice that he was coming to repair the roof, and that Ms. Bird, the real estate broker, told them the gardener, pool man, and other maintenance workers needed the remote controls for access to the house since it was listed for sale. On October 26, 2008, about two weeks after defendants moved into the Malibu house, defendant Scott sent plaintiff a letter by email, making several complaints not relevant to this appeal, and requesting "that all the locks be changed and operational." He also asked for keys to the "side door" and a remote control device for the front door. In their statement of undisputed facts, defendants state this letter requested that locks *be installed*. Defendant disputed that fact, correctly pointing out that the letter asked that the locks be "changed" by programming a new code into the security system.

At an October 25, 2008 meeting with Carol Bird, defendant Scott informed her that he "wanted all locks changed and new locks installed on all entry doors," due to unauthorized access to the property by various maintenance personnel. Bird agreed to have the keypad code for the Smart System changed. However, according to defendants, Steven Laub, the property manager, later said the Smart System could not be repaired and "it would be too expensive to repair the Smart System."

Mr. Laub denied that he ever said it would be "'too expensive to fix'" the Smart Security System.

In November 2008, Scott discovered that a code was not necessary to enter the house; one could enter by pushing hard on the main door or by pushing the "46A" icon (the address of the house) on the door's keypad.

Plaintiff disputed these facts.

Defendant Smith's personal assistant, Lindsay Faulkes, declared that she requested locks and deadbolts be placed on all entry doors. Ms. Faulkes declared that Mr. Laub

4

refused her request because the doors were "'antique Italian doors imported from a Villa in Italy.'"

Mr. Laub denied that Ms. Faulkes ever asked for a deadbolt lock to be installed, denied that he ever discussed deadbolts with Ms. Faulkes, and denied being told the magnetic lock on the entry door was not working.

Plaintiff testified at his deposition that if defendants had requested deadbolt locks, he would have had them installed.

Carol Bird, the real estate agent, declared she was not notified that the magnetic locks were not working, and a deadbolt lock was never requested.

Eugene Prowizor, a founder of the California Real Estate Inspection Association, and president of A Aa Building Inspection Services, Inc., has experience evaluating door locks to determine whether they are adequate and "comply with the Code." He is familiar with section 1941.3, and based on his experience, a two bar magnetic door lock "provides more security than a traditional deadbolt lock." He also stated his "understanding that governmental agencies have approved magnetic locks as providing at least as much security as a deadbolt lock." He opined that "an entry door with a two bar magnetic lock complies with the meaning and intent of [section] 1941.3."

Licensed general contractor Ron Dubaich opined that magnetic locks provide more security than a traditional deadbolt and comply with section 1941.3.

In their response to plaintiff's additional material facts, defendants did not dispute that they knew the entry doors did not contain traditional deadbolts, but objected to the fact as irrelevant. They also objected to the Prowizor declaration in its entirety on the grounds that he was "not . . . designated as a witness in plaintiff's witness list with respect to the trial of this action and is therefore not qualified to render a declaration in conjunction with plaintiff's opposition to motion for summary judgment." They also objected to paragraph seven of his declaration (which stated that magnetic locks provide more security than a deadbolt lock and that government agencies have approved them as providing at least as much security as a deadbolt) as speculation and hearsay, and to a

5

similar paragraph in the Dubaich declaration on the same grounds. The objections were sustained.

Defendants also objected to paragraph 12 of Mr. Laub's declaration on the basis of Evidence Code sections 1521 and 1523, and on the basis of lacking foundation, speculation, and hearsay. Paragraph 12 provided that the City signed off on all permits, and that the door entry system was installed at the time the permits were approved. The objection was sustained.

At the July 7, 2011 hearing on the motion, plaintiff argued summary judgment should be denied because defendants had not asserted a violation of section 1941.3 or breach of the implied warranty of habitability as affirmative defenses, but had raised those defenses for the first time in their summary judgment motion. Defendants argued that there was no requirement to plead a violation of section 1941.3 as an affirmative defense and, that in any event, pleadings can be amended. However, defendants did not request leave to amend their answer, and did not explain why the defense had not been raised earlier in the proceedings.

That same day, the trial court granted defendants' motion for summary judgment, concluding that section "1941.3(a)(1) requires deadbolt locks be installed and maintained on each main swinging entry door[;] [¶] The defendants have met their burden of establishing two entry doors without deadbolt locks as required by [section] 1941.3; [¶] The plaintiff has failed to rebut those facts." The court further found that plaintiff failed to establish that the home's security system "was 'inspected and approved by an appropriate state or local government agency as providing adequate security' exempting the premises from the deadbolt requirement." The court found that plaintiff "was on notice of the [section] 1941.3 requirement as outlined in the 'disclosure addendum' attached to the lease" and that "defendant did not have to provide notice to the plaintiff of the lack of deadbolts (and the failure to comply with [section] 1941.3) pursuant to [section] 1941.3(b)."

The trial court acknowledged that defendants' answer "did not raise the affirmative defense of the Breach of the Warranty of Habitability," but concluded that

6

their cross-complaint put plaintiff on notice of the defense, and that "[b]oth sides were on notice of this claim and issue, and both agreed the issue would be addressed in this motion."[2] The court found that plaintiff was not prejudiced, and that the court would thereby allow the answer to be amended to raise the affirmative defense addressed by the motion.

The court struck defendants' material facts, numbers 5, 7, 10, 11, 13 to 20, 22 to 24, and 29 (which primarily addressed whether defendants gave notice to plaintiff of the violation of section 1941.3) on the basis that they were immaterial.

On July 21, 2011, two weeks after the court granted defendants' summary judgment motion, defendants filed an amended answer alleging breach of the warranty of habitability based on plaintiff's noncompliance with section 1941.3.

Judgment was entered on the complaint on March 9, 2012, which included an award of attorney fees, as well as the refund of a portion of defendants' security deposit. This timely appeal followed.

## DISCUSSION

"[T]he party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) "Once the [movant] has met that burden, the burden shifts to the [other party] to show that a triable issue of one or more material facts exists as to that cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.) Where summary judgment has been granted, we review the trial court's ruling de novo. (*Aguilar*, at p. 860.) We consider all the evidence presented by the parties in connection with the motion (except that which was properly excluded) and all the uncontradicted inferences that the evidence reasonably supports. (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.) We affirm summary judgment where the moving party demonstrates that no triable issue of material fact

---

[2]  Other than this brief comment, the record does not disclose any agreement between the parties to litigate the section 1941.3 defense by motion for summary judgment.

exists and that it is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subds. (c).)

The pleadings determine the relevant issues on a summary judgment motion, and the motion may not be granted or denied on issues not raised by the pleadings.  (See *FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 382-383 (*FPI Development*); *Jordan-Lyon Productions,LTD. v. Cineplex Odeon Corp.* (1994) 29 Cal.App.4th 1459, 1472; *Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663 (*Bostrom*) ["Summary judgment cannot be granted on a ground not raised by the pleadings."].)

Here, defendants' answer did not allege the defense on which their motion was based.  Leave to amend may be liberally granted, but not without a motion for leave to amend that is brought and heard *before* the hearing on the motion for summary judgment. (See *California Concrete Co. v. Beverly Hills Savings & Loan Ass'n* (1989) 215 Cal.App.3d 260, 272-273 [the failure to raise an affirmative defense in an answer results in a waiver of the defense for purposes of summary judgment].)  Moreover, there are many triable issues of material fact, and therefore, we reverse the judgment, and remand this matter for further proceedings.

1.    **The Adequacy of Defendants' Answer**

Section 1941.3 requires a landlord to "[i]nstall and maintain an operable dead bolt lock on each main swinging entry door of a dwelling unit."  (§ 1941.3, subd. (a)(1).)  The statute provides that, under certain circumstances, the landlord's failure to comply with section 1941.3 may be raised as an affirmative defense by a tenant in an unlawful detainer proceeding.  (§ 1941.3, subd. (c).)

Here, defendants' answer did not raise section 1941.3 as an affirmative defense.

Their cross-complaint stated a cause of action for breach of the implied warranty of habitability, based in part on deficiencies with the home's Smart Security System (because maintenance personnel and others could enter the house with old codes and remote controls).  Their cause of action for constructive eviction complained that "[t]here were no locks on the doors and access was gained by a 'smart' automated security system

8

which required the use of a remote control or key pad device to gain entry. Unfortunately, the system never worked[,] was never repaired and the code was never changed."

Nowhere in any of the pleadings did defendants make any allegation concerning section 1941.3 or the lack of traditional deadbolts.

Defendants contend that plaintiff may not complain about deficiencies in their answer for the first time on appeal, because this issue was not addressed in plaintiff's opposition papers to the motion for summary judgment. The adequacy of the answer, however, was extensively argued during the hearing on the motion and prompted the trial court to sua sponte grant defendants leave to amend their answer after the motion was ruled upon. We see no reason why plaintiff's argument at the hearing on the motion was insufficient to preserve the issue for appellate review. Resolution of the issue does not turn on disputed facts, and presents a straightforward question of law. (*Winchester Mystery House, LLC v. Global Asylum, Inc.* (2012) 210 Cal.App.4th 579, 594 [questions of law may be decided for the first time on appeal].)

Defendants contend that an affirmative defense under section 1941.3 was unnecessary because the general denial in their answer was sufficient to put the defense at issue. An affirmative defense asserts new facts or legal issues that were not in issue under a general denial and, therefore, is not a proper ground for a defendant's motion for summary judgment unless it has been alleged. (*Kendall v. Walker* (2009) 181 Cal.App.4th 584, 598.) An affirmative defense alleges that even if the allegations in the complaint are true, defendants are not liable, whereas a general denial alleges the complaint is untrue. (See *FPI Development*, *supra*, 231 Cal.App.3d at pp. 383-384.)

Defendants' motion did not deny the allegations in the complaint (that they vacated the premises early and failed to pay rent). Instead, the motion sought to establish that defendants were legally excused from paying rent because the house was uninhabitable due to the absence of deadbolt locks, which is a factual showing completely different from the simple nonpayment of rent contemplated by the complaint.

9

Moreover, section 1941.3 characterizes any defense under its provisions as an *affirmative defense*. (See § 1941.3, subd. (c) ["in an unlawful detainer action, after a default in the payment of rent, a tenant may raise the violation of this section as an affirmative defense"].) Therefore, it had to be alleged to frame the issue for summary judgment.

Defendants, relying on *Sadlier v. Superior Court* (1986) 184 Cal.App.3d 1050, contend that summary judgment may be granted even if an answer has not been filed, and therefore argue that it is irrelevant that their answer did not include section 1941.3 as an affirmative defense. They misunderstand the dicta in *Sadlier*. The issue in *Sadlier* was whether "a plaintiff [may] obtain summary adjudication of issues pursuant to [Code of Civil Procedure] section 437c against a nondefaulting defendant prior to such defendant's filing an answer to plaintiff's complaint." (*Sadlier*, at p. 1052.) The court concluded that "current law does not require that an answer be filed before plaintiffs may make a motion for summary adjudication." (*Ibid*.) In this case, *defendants* were the moving parties, and they did not simply move for judgment on the basis that plaintiff could not prove his case, but on the ground of an affirmative defense to the complaint.

And, while it is true that leave to amend the answer may be liberally granted (*Bostrom*, *supra*, 35 Cal.App.4th at pp. 1663-1664), to do so at the hearing on a motion for summary judgment, without a request from defendants to do so, was an abuse of discretion. Defendants provided no explanation for their failure to assert the section 1941.3 defense in the two years that this action was pending before they brought their motion for summary judgment. Plaintiff could not have anticipated a defense based on section 1941.3, where the cross-complaint alleged only that the security system installed in the home was malfunctioning, that defendants did not have keys, and that people gained improper access to the home without defendants' permission or prior notice. (*Hejmadi v. AMFAC, Inc.* (1988) 202 Cal.App.3d 525, 536-537 [summary judgment should not be granted when pleadings have been superseded by amended pleadings]; *Record v. Reason* (1999) 73 Cal.App.4th 472, 486-487; *Laabs v. City of Victorville*

10

(2008) 163 Cal.App.4th 1242, 1258.) Accordingly, we find that summary judgment on the basis of this defense was improper.

## 2.    Many Triable Issues

Furthermore, there are many triable issues of material fact as summarized in the Background. We will confine our discussion, for purposes of brevity, to the material disputes as to whether plaintiff was on notice of defendants' invocation of their rights under section 1941.3 and knowingly waived those rights.

Section 1941.3 requires a landlord to "[i]nstall and maintain an operable dead bolt lock on each main swinging entry door of a dwelling unit." (§ 1941.3, subd. (a)(1).) Subdivision (b) of section 1941.3 provides that "[t]he tenant shall be responsible for notifying the owner or his or her authorized agent when the tenant becomes aware of an inoperable dead bolt lock or window security or locking device in the dwelling unit. The landlord, or his or her authorized agent, shall not be liable for a violation of subdivision (a) unless he or she fails to correct the violation within a reasonable time after he or she either has actual notice of a deficiency or receives notice of a deficiency."

A tenant has several remedies available for a violation of section 1941.3, including those provided by sections 1942, 1942.4, and 1942.5, as well as an action for breach of contract or injunctive relief. A tenant may also raise the violation as an affirmative defense in an unlawful detainer action after a default in the payment of rent. (§ 1941.3, subd. (c).) Section 1942 provides for a repair-and-deduct remedy after the landlord receives oral or written notice of the deficiency, or that the tenant may vacate the premises.[3] In their motion for summary judgment, defendants sought to establish that

---

[3]    "If within a reasonable time after written or oral notice to the landlord or his agent, as defined in subdivision (a) of Section 1962, of dilapidations rendering the premises untenantable which the landlord ought to repair, the landlord neglects to do so, the tenant may repair the same himself where the cost of such repairs does not require an expenditure more than one month's rent of the premises and deduct the expenses of such repairs from the rent when due, or the tenant may vacate the premises, in which case the tenant shall be discharged from further payment of rent, or performance of other

11

they were permitted to vacate the premises under section 1942 for plaintiff's purported noncompliance with section 1941.3.

Here, the trial court struck as immaterial all facts defendants offered to demonstrate that plaintiff received notice of the lack of deadbolts. The court reasoned that plaintiff had signed a disclosure admitting his awareness of the *statute* requiring deadbolts (and therefore presumably had actual notice of the absence of deadbolt locks). We conclude this was an abuse of discretion, because the issue of notice was a material disputed issue. Although the lease addenda may have put the parties on notice of the *legal* requirement of deadbolts, they did not put plaintiff on notice that there were nonconforming locks on the property. One of the addenda placed the burden on *defendants* to determine whether there were deadbolts on the property, and to inform plaintiff if there were not. In his opposition to defendants' motion, plaintiff squarely disputed that defendants ever addressed the lack of deadbolt locks, or claimed they malfunctioned, or that the security of the home was inadequate because the property lacked traditional deadbolts.

Also, section 1942, which affords tenants a remedy for a violation of section 1941.3, requires that a tenant give notice to the landlord before using the drastic remedy of vacating the property. "If within a reasonable time after written or oral notice to the landlord or his agent . . . of dilapidations rendering the premises untenantable which the landlord ought to repair, the landlord neglects to do so, the tenant may . . . vacate the premises, in which case the tenant shall be discharged from further payment of rent, or performance of other conditions as of the date of vacating the premises." (§ 1942, subd. (a).)

Defendants argue that plaintiff did not rely on section 1942 in his opposition to their motion. As the moving parties, defendants placed notice directly at issue, and were required to prove that they had given notice as an element of their affirmative defense.

conditions as of the date of vacating the premises. This remedy shall not be available to the tenant more than twice in any 12-month period." (§ 1942, subd. (a).)

12

(§§ 1941.3, subd. (b), 1942, subd. (a).)  To the extent that their motion relied on the remedies provided by section 1942, whether section 1942's notice requirements had been satisfied was squarely at issue.  Plaintiff offered evidence that he did not receive notice that defendants complained that the property lacked deadbolt locks.  Defendants did not demonstrate there was no material dispute as to the essential element of notice and therefore were not entitled to summary judgment.

There are also are triable issues of fact as to whether defendants waived their rights under section 1941.3.  Contrary to defendants' contention, a tenant may waive or modify rights under section 1941.3.  Section 1942.1 provides that "[a]ny agreement by a lessee of a dwelling waiving or modifying his rights under Section 1941 or 1942 shall be void as contrary to public policy with respect to any condition which renders the premises untenantable . . . ."  However, section 1942.1 is quite specific; only agreements to waive or modify rights *under section 1941 and section 1942* are void as against public policy.  Section 1941 is the requirement that a landlord make a dwelling fit for its purpose (e.g., fit for human habitation), and section 1942 sets forth the repair and deduct remedy (among others) when there are "dilapidations rendering the premises untenantable."  (§ 1942, subd. (a).)  Section 1942.1 makes no mention of section 1941.3 and its deadbolt requirement as being an unwaivable statutory right.

Defendants contend that waiver was not raised in opposition to the motion for summary judgment, and cannot be raised on appeal.  However, plaintiff argued in opposition to the motion that "Defendants knew what type of lock was installed in the entry door, seeing that they did not use a key for that door.  Having seen the lock, and accept[ing] it as an alternative to a deadbolt, they cannot claim after the fact that the lock was insufficient under Section 1941.3."  The opposition also contended that "Defendants knew what locks were on the property when it was first rented."  In his separate statement of additional material facts, plaintiff cited evidence that "[a]t the time that the Property was rented to Defendants, Defendants knew that the entry doors did not contain traditional deadbolt locks."  These facts sufficiently put the issue of waiver in dispute.

13

Plaintiff's opposition evidence showed defendants knew the house did not have a conventional keyed deadbolt when they moved in, and their complaints concerned the Smart System malfunctioning, or too many people having remote devices to use the Smart System, not the absence of a deadbolt. One of the lease addenda required defendants to notify plaintiff if the house did not have deadbolts, and there is conflicting evidence whether this was ever done. There is evidence from which it may be inferred that defendants would have been content if the Smart Security System had operated to their satisfaction. These and many other facts create material disputes barring summary judgment.

We do not reach the issue of whether the trial court properly ruled on defendants' objections to plaintiff's experts, as we need not decide whether an exception to section 1941.3 was established.

Plaintiff's request that we take judicial notice of the legislative history of section 1941.3 is granted. (Evid. Code, § 452.)

## DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court for further proceedings. Appellant shall recover his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


GRIMES, J.

WE CONCUR:



RUBIN, Acting P. J.



FLIER, J.


14